Leon R. Margules, Esq. (PHV)
MARGULES LAW GROUP, P.A.
633 South Andrews Avenue, Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 587-0482
Fax: (954) 583-7447
Marguleslaw@yahoo.com

*Attorneys for Plaintiff*
*DiBella Entertainment, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIBELLA ENTERTAINMENT, INC., a New York corporation,<br><br>                          Plaintiff,<br><br>            - against -<br><br>O'SHAQUIE FOSTER,<br><br>                        Defendant. | CASE NO. 21-cv-2709 (JGK)<br><br>PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT |

Plaintiff DiBella Entertainment, Inc. ("Plaintiff" or "DBE"), by and through its undersigned attorneys, hereby submits this memorandum, along with the accompanying Declaration ("Dombroff Decl.") of DBE's General Counsel, Alex Dombroff, Esq. ("Dombroff"), in support of Plaintiff's Motion for Partial Summary Judgment.

## TABLE OF CONTENTS

INDEX OF AUTHORITIES……………………………………………..…………………….……3

PRELIMINARY STATEMENT…………………..………………………………………….…..4

STATEMENT OF RELEVANT FACTS……………………………………..………………....6

LEGAL STANDARD…………………………………………………………………………13

    I.  SUMMARY JUDGMENT…………………………………………………………..…..13

    II. BREACH OF CONTRACT LIABILITY……………………………………..…...14

ARGUMENT………………………………………………………...……………….……15

    POINT I – FOSTER REPUDIATED ON HIS OBLIGATIONS UNDER THE PA AND THIS COURT SHOULD ENTER PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF FOSTER'S MATERIAL BREACH………………………………………………………………15

    POINT   II  –  FOSTER'S   COUNTERCLAIMS   SHOULD   BE   DEEMED   MOOT,   OR DISMISSED………………………………………………………20

        A.  FOSTER'S COUNTERCLAIM FOR BREACH OF CONTRACT (COUNT 1) FAILS FOR THE REASONS SET FORTH IN POINT I OF THIS MOTION FOR PARTIAL SUMMARY JUDGMENT (BECAUSE OF DEFENDANT'S PRIOR MATERIAL BREACH AND CONTINUED PERFORMANCE) ……………………………….…….…..21

        B.  FOSTER'S COUNTERCLAIM FOR VIOLATIONS OF THE ALI ACT (COUNT 2) FAILS BECAUSE DBE PROPERLY DISCLOSED TO FOSTER THE REVENUES FOR FOSTER'S BOUTS IN THE U.S. ………............……………………………..…...21

CONCLUSION……………………………………………..……………………….…...…………..22

BEING FILED CONCURRENTLY HEREWITH:

- *PROMOTIONAL AGREEMENT ("PA")*
- *JUNE 18, 2021 DECLARATION OF ALEX DOMBROFF, ESQ, ("June Dombroff Decl.")*
- *DECLARATION OF LOUIS DIBELLA ("DiBella Decl.")*
- *DECLARATION OF BOB ARUM ("Arum Decl.")*
- *REPUDIATION LETTER BY RODNEY DRINNON, ESQ OF FEBRUARY 11, 2021(Repudiation Letter)*
- *TRANSCRIPT OF HEARING ON MOTION FOR PRELIMINARY INJUNCTION (July 15, 2021)*
  *("Transcript July 15, 2021")*

# INDEX OF AUTHORITIES

### *Cases*

*Alzawahra v. Albany Med. Ctr.*, 546 Fed.Appx. 53, 54 (2d Cir. 2013)……………………….…………**13,14**

*Amco Ins. Co. v. Cobank, ACB, 2021 U.S. Dist. LEXIS 181077(2d Cir. 2021)*……………...…………**13, 14, 15**

*Am. List Corp. v. U.S. News & World Report, Inc.,* 75 N.Y.2d 38 (1989);………………....…**15, 19, 20**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)………………………………….……………**13**

*Celotex Corp. v. Catrett*, 477 U.S. at 323, 106 S. Ct. at 2552-53………………………………….………**14**

*Dolan v. Cassella*, 543 Fed.Appx. 90, 90 (2d Cir. 2013).……………...……………………………….……**14**

*Echols v. Arthur Pelullo & Banner Promotions*, 2003 U.S. Dist. LEXIS 9583 (E.D. Pa., June 3, 2003)……**22**

*Holtz v. Rockefeller & Co. Inc.*, 258 F. 3D 62,69 (2d Cir. 2001)………………………………………**13**

*Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)………………………………...……….....**14**

*LG Capital Funding, LLC v. PositiveID Corp. F.3d  3 (2d Cir. 2019)(U.S. Dist. LEXIS 126991)*…………….…**15**

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)………………………...**14**

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007)………….……………**15**

*Merrill Lynch Int'l v. XL Capital Assur. Inc., 564 F. Supp. 2d 298 (N.Y.S.D July 15, 2008)*…....**15, 19, 20**

*Scott v. Harris*, 550 U.S. 372,380,127 S. Ct. 1769,1776 (2007)………………...…………….…………**14**

*Spinelli v. Nat'l Football League, 903 F.3d 185, 200 (2d Cir. 2018)*…………………….………………**14**

*Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)………………………….……………**14**

### *Rules*

Fed. R. Civ. P. 56(a)……………………………………………………….……………….**13**

## PRELIMINARY STATEMENT

On April 1, 2019, Plaintiff, DiBella Entertainment, Inc., ("DBE") and Defendant, O'Shaquie Foster ("Foster") entered into a Promotional Rights Agreement ("PA").[1] Section 27 of the PA provides a "Notices of Beach/Curing Period" provision which states that "if at any time Promoter or Fighter, as applicable, believe that the terms of this Agreement are not being fully and faithfully performed hereunder, Promoter or Fighter, as applicable, will so advise the other in writing by registered or certified mail, return receipt requested, or via confirmed email address, if provided in the "Notices" section below, of the specific nature of any claim, non-performance or misfeasance and the party receiving such notice shall have a period of sixty (60) calendar days after receipt thereof within which to cure such claimed breach.[2] Section 27 of the PA makes clear that a party to the PA who is allegedly in breach of same, cannot be in breach if the party does not have notice or the opportunity to cure.[3]

Before DBE was able to schedule Foster's third Bout in the first Contract Year of the PA, the COVID-19 pandemic hit, and all live sporting events worldwide, including in the State of New York, came to an abrupt halt. Since the first Contract Year did not expire at the earliest until July 16, 2020, when the COVID-19 pandemic hit in March 2020, the contract was tolled upon notice to Foster until September 2020 when Foster was offered his third Bout, thus extending the end of the Contract Year to January 2021.[4] Further, DBE's "Big Bout Guarantee" to Foster, guaranteeing him the opportunity, within eighteen (18) months from commencement of the PA, to participate in a Bout that meets specific criteria set forth in Section 3.6 of the PA, was also tolled and extended until six (6) months beyond

---

[1] *PA; see also DECLARATION OF LOUIS DIBELLA ("DiBella Decl.")*
[2] *Id.*
[3] *Id.*
[4] *JUNE 18, 2021 DECLARATION OF ALEX DOMBROFF, ESQ, ("June Dombroff Decl.")*

January 2021. Ultimately Foster's third bout of the first Contract Year occurred on November 19, 2020, as more specifically set forth below.[5]

On September 18, 2020, DBE, through a letter from Alex Dombroff, offered Foster a Bout against Miguel Roman in November of 2020. Foster accepted the September Offer and fought Roman on November 19, 2020, scoring the most significant win of his career in a Bout which was nationally televised by NBC Sports Network.[6] The Bout did in fact occur prior to January 16, 2021, the end of the first Contract Year, as extended pursuant to Section 20 of the PA. Therefore, DBE fully satisfied all its obligations to Foster under the PA, including, its obligation under Section 3.1 to offer to promote Foster in at least 3 Bouts per Contract Year.

On February 11, 2021, Rodney Drinnon, Esq. ("Drinnon"), Foster's attorney, sent Dombroff a letter (the "Repudiation Letter") claiming that DBE was in breach of the PA for failing to promote Foster in three bouts by July 16, 2020, that DBE could not suspend the term of the PA due to the pandemic, and that "Foster does not consider himself bound by the Promotional Rights Agreement."[7] In the Repudiation Letter, Drinnon tried to strongarm DBE into "release[ing] Foster" by threatening that "I don't think DBE would want to challenge this publicly [sic] as a defeat would result in the wholesale departure of its remaining stable of fighters."[8]

Prior to February 11, 2021, Foster did not notify DBE of any alleged breaches of the PA, nor did he provide DBE with an opportunity to cure such alleged breaches.[9]

Accordingly, DBE respectfully requests that the Court enter partial summary judgment in DBE's favor as to Foster's liability to DBE for breach of the PA and dismiss Foster's First Amended Counterclaims (ECF No. 65) (the "Counterclaims").

---

[5] *June Dombroff Declaration*
[6] *June Dombroff Declaration*
[7] *REPUDIATION LETTER BY RODNEY DRINNON, ESQ OF FEBRUARY 11, 2021(Repudiation Letter)*
[8] *Repudiation Letter*
[9] *June Dombroff Declaration, Exhibit 1*

## STATEMENT OF RELEVANT
## FACTS

1.          DBE is a New York corporation based in New York, and it is licensed as a boxing promoter with various state athletic commissions, including the New York State Athletic Commission ("NYSAC").

2.          Foster is a professional boxer and is currently rated No. 2 in the world by the World Boxing Council ("WBC") in the 130 lb. division.

3.          On or about April 14, 2019, Foster entered into a Promotional Rights Agreement (the "PA") dated as of April 1, 2019, with DBE.[10]

4.          Section 3.1 of the PA requires DBE to offer to promote Foster in a minimum of 3 Bouts per "Contract Year" for certain specified minimum purses. [11]

5.          Section 3.6 of the PA provides for a "Big Bout Guarantee" in which DBE agrees to offer Foster a "Big Bout" as specifically defined and set forth in the PA within eighteen (18) months from the commencement of the PA. [12]

6.          Section 2 provides that the first Contract Year started on July 17, 2019, the date of Foster's first Bout.[13]

7.          In return for promoting Foster in 3 bouts per Contract Year, Section 1 of the PA grants to DBE the exclusive right to promote Foster during the term.  [14]

8.          Section 20 of the PA gives DBE the right to suspend the term of the PA in the event of a force majeure or other cause not within DBE's control, stating that "[i]f, because of an act of God or nature, inevitable accident, fire, hurricane, tornado, earthquake, sinkholes or other

---

[10]*PA*
[11]*PA*
[12]*PA*
[13]*PA*
[14]*PA*

abnormal weather/natural conditions, lockout, strike or other labor dispute, riot or civil commotion, act of public enemy, enactment, rule, order or act of any government or governmental instrumentality (whether federal, state, local or foreign), failure of technical facilities, failure or delay of transportation facilities, or other cause of similar or different nature not reasonably within Promoter's control, Promoter are materially hampered and its normal business operations or the normal business operation of the premises or event sites becomes commercially impractical, then, without limiting Promoter's rights, Promoter shall have the right by giving Fighter notice to suspend the term of this agreement for the duration of any such contingency plus such additional time as is necessary so that Promoter shall have no less than sixty (60) days after the cessation of such contingency in which to exercise its option, if any, for the next following Option Period."[15]

9.      Section 27 of the PA provides a "Notices of Beach/Curing Period" provision which states that "if at any time Promoter or Fighter, as applicable, believe that the terms of this Agreement are not being fully and faithfully performed hereunder, Promoter or Fighter, as applicable, will so advise the other in writing by registered or certified mail, return receipt requested, or via confirmed email address, if provided in the "Notices" section below, of the specific nature of any claim, non-performance or misfeasance and the party receiving such notice shall have a period of sixty (60) calendar days after receipt thereof within which to cure such claimed breach. Section 27 of the PA makes clear that a party to the PA who is allegedly in breach of the PA, cannot be in breach if the party does not have notice or the opportunity to cure.[16]

10.     Foster's first Bout occurred on July 17, 2019. [17]

11.     Foster's second Bout took place on December 5, 2019, approximately four and a

---

[15] *PA*
[16] *PA*
[17] *DiBella Decl.*

half months after his first Bout.[18]

12.     Given that the first Contract Year did not expire at the earliest until July 16, 2020, the "Big Bout Guarantee" did not expire until at least six (6) months after that, absent an applicable extension of the first Contract Year, DBE customarily would have scheduled Foster's third Bout to take place at the latest in May or June 2020, and provided the "Big Bout Guarantee" thereafter at the latest in December, 2020 or January, 2021.[19]

13.     Before DBE was able to schedule Foster's third Bout, the COVID-19 pandemic hit, and all live sporting events worldwide, including in the State of New York, came to an abrupt halt. On March 13, 2020, President Trump signed Proclamation 9994 Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID–19) Outbreak (the "Pandemic"). [20]

14.     Due to the pandemic and the cessation of all of boxing, in March 2020, DBE began offering advances to its fighters, including Foster, to provide financial assistance to them during the pandemic. Foster was the first DBE fighter to be offered such an advance, and DBE communicated this offer to Foster "c/o" his manager, Keith Mills ("Mills"). Pursuant to the letter agreement dated March 18, 2020 (the "Advance Letter"), DBE advanced Foster $2,500.00.[21]

15.     In paragraph 6 of the Advance Letter, Foster agreed that if "as of December 31, 2020, Foster has still not competed in his next bout...the advance shall become due..."[22]

16.     On March 27, 2020, DBE sent an email to Foster (the "March 27 email") regarding the pandemic which stated that DBE would "be broadly invoking the force majeure provisions across all of its active promotional agreements. [23]

---

[18] *June Dombroff Decl.; see also DiBella Decl.*
[19] *June Dombroff Decl.;; see also DiBella Decl.*
[20] *June Dombroff Decl. ; see also DiBella Decl.*
[21] *June Dombroff Decl. ; see also DiBella Decl.*
[22] *June Dombroff Decl. see also DiBella Decl.*
[23] *June Dombroff Decl. ___*
.

17.     On July 14, 2020, DBE sent Foster, care of his manager, ShaKeith Mills ("Mills") a letter (the "Invocation Letter") notifying him that DBE was invoking the Force Majeure provision in the PA (the "FMC") "<u>beginning with the start of widespread Covid-19 related closures</u> and until such time that DBE's ability to put on events is not materially impacted and revenue pools are restored, including the ability to sell tickets for admission."[24] This letter extended DBE's obligation to provide Foster's third Bout, and an additional six (6) months after the first Contract Year to comply with the "Big Bout Guarantee" provision in the PA. [25]

18.     After receiving the above-quoted letter, Foster, through his manager, Mills, kept in regular contact with principals from DBE and neither he or his representatives once complained, alleged, or notified DBE that DBE was allegedly in breach for failing to promote Foster's third Bout by July 16, 2020. [26]

19.     On September 18, 2020, Dombroff sent an email to Mills, containing an offer (the "September Offer") for Foster of a bout (the "Roman Bout") with Miguel Roman on November 19, 2020. [27]

20.     Since the first Contract Year began did not expire at the earliest until July 16, 2020, when the COVID-19 pandemic hit in March 2020, the contract was tolled upon notice to Foster until September 2020 when Foster was offered his third Bout, thus extending the end of the Contract Year to January 2021.[28] Additionally, since the period for the "Big Bout Guarantee" did not expire until six (6) months after the end of the first Contract Year, the time to provide the "Big Bout" was tolled per Section 3.6 of the PA until at least July of 2021.[29]

---

[24] *June Dombroff Decl.; see also DiBella Decl.*
[25] *June Dombroff Decl.; see also DiBella Decl.*
[26] *June Dombroff Decl.; see also DiBella Decl.*
[27] *June Dombroff Decl.; see also DiBella Decl.*
[28] *June Dombroff Decl.; see also DiBella Decl.*
[29] *June Dombroff Decl.*

21.     The tolling period was defined and agreed to as part of the negotiation for Foster's most recent Bout in that Mr. Dombroff's September 18, 2020 letter stated that "pursuant to the tolling notice you were sent on July 14, the [PA] shall be understood to have tolled beginning March 16, 2020, with such tolling period lasting for 6 consecutive months (until September 16, 2020). As a result, the first Contract Year of the [PA] will end on January 16, 2021, and the second Contract Year will commence on January 17, 2021."[30]

22.     Foster accepted the September Offer and fought Roman on November 19, 2020, scoring the most significant win of his career in a Bout which was nationally televised by NBC Sports Network. The Bout did in fact occur prior to January 16, 2021, the end of the first Contract Year, as extended pursuant to Section 20 of the PA. Therefore, when it offered Foster the November 19 Bout in September 2020, DBE shortened the potential tolling period and fully satisfied all its obligations to Foster under the PA as required in the first Contract Year, including, its obligation under Section 3.1 to offer to promote Foster in at least 3 Bouts per Contract Year.

23.     After Foster's November 19, 2020 victory over Roman, on December 8, 2020, a tweet (the "December Tweet") was posted to Foster's Twitter account stating "[j]ust found out I'm ranked #4 in the world by the WBC.  Thankful to My Team, @loudibella and @WBCBoxing for this opportunity." [31]

24.     On February 11, 2021, Rodney Drinnon, Esq. ("Drinnon") sent Dombroff a letter (the "Repudiation Letter") claiming that DBE was in breach of the PA for failing to promote Foster in three bouts by July 16, 2020, that DBE could not suspend the term of the PA due to the pandemic, and that "Foster does not consider himself bound by the Promotional Rights

---

[30] *Dombroff Decl. __.*

Agreement." [32]

25.     In the Repudiation Letter, Drinnon tried to strongarm DBE into "release[ing] Foster" by threatening that "I don't think DBE would want to challenge this publically [sic] as a defeat would result in the wholesale departure of its remaining stable of fighters."[33]

26.     Prior to February 11, 2021, Foster did not notify DBE of any alleged breaches of the PA nor did he provide DBE with an opportunity to cure such alleged breaches.[34]

27.     On March 31, 2021, DBE filed this lawsuit against Foster for, which was thereafter Amended on May 24, 2021, and only includes one count for Breach of Contract. Foster filed its Answer and Counterclaims on June 7, 2021, including Counterclaims for Breach of Contract, Fraudulent Inducement, Declaratory Relief and Violation of the Muhammad Ali Boxing Reform Act; Foster also moved the Court for a Preliminary Injunction.

28.     On July 15, 2021, this Court held a hearing on the Motion for Preliminary Injunction, in which the Court denied the Motion.

29.     In its decision, the court quoted the Force Majeure provision of the PA, mentioning that "Arguably, the COVID-19 pandemic was a contingency within the meaning of the clause because it was an act of nature or an abnormal natural condition not within DBE's control that materially hampered DBE's business and rendered it commercially impractical for some period," that "the force majeure clause did not require a total halt of all fights," and that "there is no question that bouts were extremely limited during the period of the pandemic, beginning in about March 2020. The Court also mentions that "there is not credible argument that DBE was not "materially

---

[32] *June Dombroff Decl.*
[33] *June Dombroff Decl.; see also Repudiation Letter*
[34] *Juneombroff Decl,.; see also Repudiation Letter*

hampered in its normal business operations" because of the pandemic.[35]

30.     The Court also mentions that although Foster argues he never was personally served with any document other than the original complaint with jury demand, that "notice to an agent serves as notice to the principal" and that Foster received the July 14, 2020, written notice invoking the force majeure provision in the PA, as well as all other notices relevant to this lawsuit (such as the Advance Letter), through receipt of the letter by his manager, Mills.[36]

31.     The Court quotes Section 27 of the PA, which requires a party to give the alleged party written notice of any alleged breach of the PA and an opportunity to cure, and mentions that "Several additional facts undermine Foster's claim that the force majeure clause was improperly invoked, including that in a November 2020 video interview, which was introduced at the hearing, Foster praised DiBella" and "there was no allegation of any breach of contract." The Court also mentions the December 8, 2020, tweet by Foster about DiBella. Further, the Court reasons that "Foster failed to notify DBE of the alleged breach of contract and provide an opportunity to cure, which he was required to do under the contract, both after the notice of the force majeure being invoked and after the communication relating to the Roman fight, which reiterated that the contract dates had changed as a result of the force majeure suspension" and that if ""Foster had complained that notice him through his manager was insufficient…. DBE could have made personal service on Foster and cured the alleged breach." [37]

32.     Lastly, the Court reasons that "After July, 2020, Foster fought in a bout under the PA in November of 2020 and did not assert that the PA had been terminated until his counsel made that allegation in February 2021, and Foster waited about four months after that to bring the

---

[35] *Transcript of hearing on Motion for Preliminary Injunction* (July 15, 2021)
[36] *Transcript July 15, 2021*
[37] *Transcript July 15, 2021*

preliminary injunction motion." Additionally, the Court ruled that Foster's Motion fails to meet any of the other elements required to Order a Preliminary Injunction, such as a likelihood of success on the merits. [38]

## LEGAL STANDARD

### I. <u>SUMMARY JUDGMENT</u>

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the non-moving party, *see Amco Ins. Co. v. Cobank, ACB, 2021 U.S. Dist. LEXIS 181077(2d Cir. 2021); see also Holtz v. Rockefeller & Co. Inc., 258 F. 3D 62,69 (2d Cir. 2001).*

There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The initial burden of establishing that no genuine factual dispute exists rests upon the party seeking summary judgment. *Alzawahra v. Albany Med. Ctr.*, 546 Fed.Appx. 53, 54 (2d Cir. 2013). If the moving party shows a prima facie entitlement to summary judgment, the burden

---

[38] *Transcript July 15, 2021*

shifts to the non-movant to point to record evidence creating a genuine issue of material fact. To defeat a summary judgment motion, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986)). Conclusory allegations, conjecture and speculation' do not establish a genuine issue of fact, and thus will not provide a sufficient basis for a nonmoving party to resist summary judgment. *see Amco Ins. Co. v. Cobank, ACB, 2021 U.S. Dist. LEXIS 181077(2d Cir. 2021); see also Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998).* Instead, the non-moving party must "cit[e] to particular parts of materials in the record" to show that "a fact ... is genuinely disputed." Fed. R. Civ. P. 56(c)(1); *see, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587, 106 S. Ct. at 1356; *Alzawahra v. Albany Med. Ctr.*, 2013 WL 6284286 at *1; *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. at 323, 106 S. Ct. at 2552-53; *Dolan v. Cassella*, 543 Fed.Appx. 90, 90 (2d Cir. 2013).

## II.  BREACH OF CONTRACT LIABILITY

Under New York law "if a contract is straightforward and unambiguous, its interpretation presents a question of law for the court to be made without resort to extrinsic evidence, *see Spinelli v. Nat'l Football League, 903 F.3d 185, 200 (2d Cir. 2018), see also see Amco Ins. Co. v. Cobank, ACB, 2021 U.S. Dist. LEXIS 181077(2d Cir. 2021) (granting Partial Summary Judgment on the Issue of Liability for Breach of Contract).* To grant summary judgment on a breach of contract claim, the court must determine both (1) that there are no genuine issues of

material fact that a party engaged or failed to engage in certain conduct, and (2) that such acts or omissions unambiguously breach the terms of the contract, *see LG Capital Funding, LLC v. PositiveID Corp. F.3d 3 (2d Cir. 2019) (U.S. Dist. LEXIS 126991).*

Under New York law, a wrongful repudiation of the contract by one party before the time for performance entitles the non-repudiating party to immediately claim damages for breach of contract. *Am. List Corp. v. U.S. News & World Report, Inc.,* 75 N.Y.2d 38 (1989); *see also Merrill Lynch Int'l v. XL Capital Assur. Inc., 564 F. Supp. 2d 298 (N.Y.S.D July 15) (2d. Cir. 2008).* Further, a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach." *Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171, 186 (2d Cir. 2007).*

## ARGUMENT

By not notifying his promoter that he believed he was owed a third bout by July 16, 2020 pursuant to Section 27 of the PA, and by the February 11, 2021 Repudiation Letter, Foster breached his express obligations under the PA, and it was Foster therefore who breached the PA. Based upon the application of the foregoing standards to the facts and circumstances of this case, there are no material issues of disputed fact that merit a trial on this issue and DBE is entitled to summary judgment (a) in favor of its breach of contract claim, and (b) dismissing the counter claims brought by Foster.

## POINT I – FOSTER REPUDIATED ON HIS OBLIGATIONS UNDER THE PA AND THIS COURT SHOULD ENTER PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF FOSTER'S MATERIAL BREACH

Foster was the party that failed to perform his obligations under the PA, when on February 11, 2021, Rodney Drinnon, Esq. ("Drinnon") sent Dombroff a letter (the "Repudiation Letter")

claiming that DBE was in breach of the PA for failing to promote Foster in three bouts by July 16, 2020, that DBE could not suspend the term of the PA due to the pandemic, and that "Foster does not consider himself bound by the Promotional Rights Agreement."  Drinnon tried to strongarm DBE into "release[ing] Foster" before the end of the term of his contract with the Repudiation Letter and by threatening that "I don't think DBE would want to challenge this publically [sic] as a defeat would result in the wholesale departure of its remaining stable of fighters."[39]

Additionally, Prior to February 11, 2021, it is undisputed that DBE was never notified of any alleged breach of the PA, nor given an opportunity to cure such breaches (pursuant to Section 27 of the PA) before Foster repudiated on his obligations under the PA on February 11, 2021. To date, Foster has still failed to provide any evidence to refute the fact that DBE never received notice of any alleged breach of the PA.

Foster claims that the first breach of contract occurred when DBE had not scheduled Foster for a third match by July 16, 2020 because DBE's invocation of the FMC on July 14, 2020 was improper.

According to the March 18, 2020 $2,500.00 advance letter (the "Advance Letter"), Foster acknowledged receipt of a $2,500.00 loan from DBE that DBE was providing to its fighters to assist them during the pandemic which had been declared a national emergency 5 days earlier. The Language in Paragraph 6 of the Advance that "[i]if as a of December, 2020, Fighter has still not competed in his next Bout" put Foster and his manager Mills on notice that Foster's "next Bout," which otherwise should have occurred by July 16, 2020, might not occur until after December 30, 2020, particularly since as of March 18, 2020, boxing as a sport had come to a complete halt

---

[39] *Repudiation Letter*

worldwide, especially in the State of New York. Foster did not object to Paragraph 6, and in the context of everything that was happening at that time, Foster knew that his "next Bout" was being postponed because of the pandemic and that DBE was providing him with financial assistance as a result. DBE was therefore entitled to rely on Foster's agreement that his "next Bout" was being postponed in making an advance to Foster, and therefore, Foster should be estopped from asserting otherwise.

The March 27, 2020 email, which was sent nine (9) days after the Advance Letter, stated that DBE would "be broadly invoking the force majeure provisions across all of its active promotional agreements." This communication likewise notified Foster that DBE would not be in breach of the PA, for failing to promote Foster's third Bout by July 16, 2020, since the FMC would suspend the term.

Finally, the Invocation Letter DBE sent on July 14, 2020 which formally invoked the FMC to suspend the PA also put Foster on notice that his third bout would not take place by July 16, 2020.

Given the 60-day cure period in Section 27 of the PA, if Foster truly believed that DBE was going to be in breach of the PA for not promoting his third bout by July 16, 2020, at a minimum, Foster should have notified DBE by May 17, 2020 (i.e., 60 days prior to July 16, 2020) that he "believe[s]" that he was owed a third bout by July 16, 2020, but he did not. Foster has asserted that boxing "resumed in earnest" in the U.S. on June 7, 2020, but provides no evidence for this allegation, nor does he offer an excuse for not notifying DBE after boxing allegedly "resumed" that DBE had until July 16, 2020 to promote him in his third bout, or it would be in breach. Additionally, in its ruling at the conclusion of the July 15, 2021 hearing on the Motion for Preliminary Injunction, the Court stated that "the force majeure clause did not require a total halt

of all fights, and DBE has submitted affidavits, and DiBella testified, credibly, that boxing had not resumed in earnest at the time the force majeure clause was invoked."[40]

In June of 2020, Top Rank became the first Promoter to begin promoting events. Foster makes much of the fact that Top Rank needed opponents to match its star boxers against for its "bubble" shows and that DBE provided a few of its fighters to Top Rank – but those fighters were to be opponents for Top Rank's star boxers and were specifically requested by Top Rank – DBE had no ability to force Top Rank to use Foster (who is definitely not an "opponent," but someone with the talent to defeat any highly rated boxer) and DBE did not have a network like ESPN, that was willing to invest substantial sums in order to get live sports back on air. In the summer of 2020, DBE simply did not have any way to promote Foster in a bout and therefore was well within its rights to invoke the FMC.[41] (DBE submits that the Court should take judicial notice of the pandemic's impact on boxing and that a live event with ticket sales did not occur in the State of New York until August 3, 2021). In fact, this Court at the Motion for Preliminary Injunction hearing, rejected Foster's self-serving allegation which has no basis that "boxing resumed in earnest" on June 7, 2020 stating in its ruling that "there is no question that bouts were extremely limited during the period of the pandemic, beginning in about March 2020. There is no credible argument that DBE was not "materially hampered in its normal business operations."[42]

On September 18, 2020, Foster agreed to the six-month suspension in the September Offer that Dombroff sent to Mills, containing an offer for the "Roman Bout" with Miguel Roman on November 19, 2020, which also stated that "pursuant to the tolling notice you were sent on July 14, the [PA] shall be understood to have tolled beginning March 16, 2020, with such tolling period

---

[40] *Transcript July 15, 2021*
[41] *DiBella Decl.*
[42] *Transcript July 15, 2021*

lasting for 6 consecutive months (until September 16, 2020).[43] As a result, the first Contract Year of the [PA] will end on January 16, 2021, and the second Contract Year will commence on January 17, 2021." Foster accepted the September Offer and participated in the Roman bout on November 19, 2020, prior to January 16, 2021, the end of the first Contract Year as extended. This gave DBE an additional six (6) months to give Foster his "Big Bout."

Foster failed to notify DBE of the alleged breach of contract and provide an opportunity to cure, which he was required to do under Section 27 of the PA, after DBE formally notified him, through his manager, Mills, on July 14, 2020 that the FMC was being invoked.[44] Foster likewise failed to notify DBE of the alleged breach of contract and provide an opportunity to cure, after DBE made the September Offer for the Roman Bout, which reiterated that the term had been suspended due to DBE's invocation of the FMC and specified the new dates for the Contract Years under the PA.[45]

Under New York law, "a wrongful repudiation of the contract by one party before the time for performance entitles the non-repudiating party to immediately claim damages for a total breach of contract. *Am. List Corp. v. U.S. News & World Report, Inc.,* 75 N.Y.2d 38 (1989); *see also Merrill Lynch Int'l v. XL Capital Assur. Inc., 564 F. Supp. 2d 298 (N.Y.S.D July 15) (2d. Cir. 2008).* Also, "a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach." *Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171, 186 (2d Cir. 2007).* By not putting DBE on notice that he believed he was owed a third bout by July 16, 2020, and by the February 11, 2021 Repudiation Letter, Foster breached his obligation and

---

[43] *June Dombroff Decl; see also DiBella Decl.*
[44] *June Dombroff Decl; see also DiBella Decl*
[45] *June Dombroff Decl; see also DiBella Decl*

repudiated the PA before the time for performance had expired. [46]

Foster's defense for not complying with the notice and cure provision is that compliance "was rendered impossible because the terms of the first Contract Year and Big Bout Guarantee had not expired."[47] Notwithstanding the fact that the Contract Year and Big Bout Guarantee periods were extended by invocation of the force majeure provision, and assuming that it was in fact impossible to "cure" such alleged breach after the applicable time period had expired, Foster still had an obligation to notify DBE of the breach, and the Repudiation letter was therefore a material breach of the PA.

Similarly, Foster continued to perform under the PA up to February 2021, never once complaining that DBE was in breach, even after being notified that DBE was invoking the FMC to suspend the term. After DBE formally invoked the FMC provision of the PA, neither Foster or Mills ever voiced any objection, and Foster and Mills clearly understood why the PA was being tolled, and they agreed.[48]

This Court, in the July 15, 2021 hearing on Foster's Motion for Preliminary Injunction, states "Foster failed to notify DBE of the alleged breach of contract and provide an opportunity to cure, which he was required to do under the contract, both after the notice of the force majeure being invoked and after the communication relating to the Roman fight, which reiterated that the contract dates had changed as a result of the force majeure suspension."[49]

Therefore, based on the above arguments, this Court should enter Summary Judgment in favor of DBE, and against Foster on the issue of Foster's breach of contract in this matter.

---

[46] *Repudiation Letter*
[47] *Counterclaims ¶49*
[48] *June Dombroff Decl.*
[49] *Transcript July 15, 2021*

**POINT II – SUMMARY JUDGMENT SHOULD ALSO BE GRANTED IN FAVOR OF DBE WITH REGARDS TO ALL OF FOSTER'S COUNTERCLAIMS**

**A.   FOSTER'S COUNTERCLAIM FOR BREACH OF CONTRACT (COUNT I) FAILS FOR THE REASONS SET FORTH IN POINT I OF THIS MOTION FOR PARTIAL SUMMARY JUDGMENT (BECAUSE OF DEFENDANT'S PRIOR MATERIAL BREACH AND CONTINUED PERFORMANCE).**

In the event that it is established that the February 11, 2021 Repudiation Letter constituted an unequivocal breach of the PA, DBE argues that all of Foster's Counterclaims should be considered moot by this Court and Foster's breach of contract should pre-empt Foster from being able to move forward on asserting any of his Counterclaims. However, if this Court finds that the Repudiation Letter did not constitute a breach of the PA, summary judgment should be granted in favor of DBE on the Counterclaims brought by Foster as more specifically set forth below.[50]

**B.   FOSTER'S COUNTERCLAIM FOR VIOLATIONS OF THE ALI ACT (COUNT 2) FAILS BECAUSE DBE PROPERLY DISCLOSED TO FOSTER THE REVENUES FOR FOSTER'S BOUTS IN THE U.S.**

According to BoxRec.com, Foster participated in the following three bouts under the PA:



With respect to Foster's bout on November 19, 2020, Exhibit F to the Drinnon Aff. contains the financial disclosures that DBE provided to Foster and states: "In the interest of transparency, DBE is receiving a license fee of $35,000 from the Ring City series to provide O'Shaquie's services, inclusive of [Foster's $25,000] purse."[51]

---

[50] *Repudiation Letter*
[51] *June Dombroff Decl.*

With respect to Foster's bout on December 5, 2019, DBE provided the following financial disclosure which Foster acknowledged receiving:

DECEMBER 5, 2019 ALI ACT DISCLOSURE

AS REQUIRED BY SECTION 13 OF THE MUHAMMAD ALI ACT, DIBELLA ENTERTAINMENT HEREBY DISCLOSES TO THE UNDERSIGNED THAT IT SHALL RECEIVE OR ANTICIPATES RECEIVING THE BELOW REVENUE ON THE *BROADWAY BOXING* EVENT TAKING PLACE DECEMBER 5, 2019 IN NEW YORK, NEW YORK ON WHICH THE UNDERSIGNED IS PARTICIPATING. ALL REVENUE LISTED IS AS RELATES TO THE EVENT AS A WHOLE AND NOT TO ONE SPECIFIC BOUT.

| SOURCE OF REVENUE | AMOUNT |
| --- | --- |
| UFC FIGHT PASS | $50,000 |
| TICKET SALES | $20,000 (approximately) |
| SPONSORSHIP | $550 |

UNDERSTOOD AND ACCEPTED:

O'Shaquie Foster: X

Alberto Mercado: X

Ana Laura Esteche: X

[52]

Finally, with respect to Foster's bout on July 17, 2019, that bout took place in Costa Rica and therefore the Ali Act did not apply. In *Echols v. Arthur Pelullo & Banner Promotions*, 2003 U.S. Dist. LEXIS 9583 (E.D. Pa., June 3, 2003), the Court dismissed a boxer's claim under the Ali Act that his promoter has failed to make financial disclosures related to a bout in Germany because 15 U.S.C. 6301(8) defines "[p]rofessional boxing match" as "a boxing contest held in the United States between individuals for financial compensation." *Id.*

Because DBE has provided all required financial disclosures to Foster under the Ali Act for each of his Bouts that have taken place in the U.S. under the PA, summary judgment should be granted in favor of DBE as to Foster's claim for DBE's violation of the Ali Act with respect to any bout that DBE promoted Foster.

## CONCLUSION

DBE respectfully requests that the Court grant this Motion for Partial Summary Judgment in favor of DBE on its Amended Complaint and against Foster on his Counterclaims.

---

[52] *June Dombroff Decl., Exhibit 4*

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies in accordance with Section II.D. of the Court's Individual Practices that according to Microsoft Word, the foregoing Memorandum in Opposition contains 6,536   words, excluding the cover page, this certification of compliance, the table of contents and the table of authorities, and that it complies with the Court's formatting rules.

Dated: October 9, 2021

> *Respectfully submitted,*
>
> */s/ Leon R. Margules*
> Leon R. Margules, Esq. (PHV)
> MARGULES LAW GROUP, P.A.
> 633 South Andrews Avenue, Suite 500
> Fort Lauderdale, Florida 33301
> Tel: (954) 587-0482
> Fax: (954) 583-7447
> Marguleslaw@yahoo.com
>
> *Attorneys for Plaintiff*
> *DiBella Entertainment, LLC*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 9, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/*Leon R. Margules*
Leon R. Margules, Esq. (PHV)
MARGULES LAW GROUP, P.A.
633 South Andrews Avenue, Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 587-0482
Fax: (954) 583-7447
Marguleslaw@yahoo.com
***Attorneys for Plaintiff***
***DiBella Entertainment, LLC***

## SERVICE LIST

CASE NO.: 21-cv-2709

(PHV) Rodney L. Drinnon
(PHV) Amanda Gordon, Esq.
(PHV) Tatiana P. Lutomsky, Esq.
MCCATHERN LAW FIRM
2000 W. Loop S., Suite 1850
Houston, Texas 77027
Tel: (832) 533-8689
Fax: (832) 213-4842
***Attorneys for Defendant***